# THE STATE v. BLOCKER.

1. A witness summoned before the grand jury, to give evidence of any gambling in violation of the laws of the State, who declines to answer, may be proceeded against by indictment, but cannot be fined for a contempt.

Writ of Error to the Criminal Court of Mobile. Before the Hon. John E. Jones.

James Y. Blocker, having been summoned as a witness before the grand jury, appeared, and being asked by the solicitor, whether he knew of any gaming in violation of the

The State v. Blocker.

laws of the State, answered that he did. He was then asked to state the name of the person, or persons, (not naming himself,) guilty of such violation of the law, but declined to answer; and having been ordered by the court to answer the question, and again refusing, the court directed a fine of twenty dollars to be entered against him. This is now assigned as error.

ATTORNEY GENERAL, for the State.

COLLIER, C. J.—The tenth section of the sixth chapter of the penal code enacts that "the attorney general and the several solicitors of this State, shall have the power, and it shall be their duty to send a summons to any person or persons, in the name of such solicitor or attorney general, directing them to come before the grand jury of the proper county, and to give evidence of any gaming in violation of the laws of this State against that offence; and the person or persons so summoned, shall not be liable or subject to an indictment for any offence of which he may have given evidence; and the attorney general and the several solicitors are authorized to issue a summons as aforesaid, not only while the grand jury is in session before which the witness may be required to testify, but at any time previous to the sitting of the court at which they are impanneled; and if any person shall fail or refuse to attend and testify in obedience to such summons, he shall be liable to indictment, and on conviction, shall be fined in any sum not less than twenty, nor exceeding five hundred dollars, and sentenced to a term of imprisonment not exceeding three months: *Provided*, all reasonable excuses shall be heard. Clay's Dig. 432. This enactment very clearly indicates a strong desire on the part of the legislature to suppress the pernicious vice of gaming, not only by the power conferred upon the prosecuting officer of the State to issue *subpœnas*, but the extended scope allowed to the grand jury in the examination of witnesses subjected to their inquiries. The general terms, "to give evidence of any gaming in violation of the laws of this State

against that offence," are sufficiently comprehensive to war-
rant the fullest and most unrestricted inquiry as to the of-
fence, (without reference to persons or places,) within the
limits of the county, and the period prescribed as a limitation
to an indictment.   They were intended, if not to enlarge, at
least to express with such clearness as could leave no room to
doubt the authority of the grand jury in this respect.   The
power is certainly *inquisitorial*, and one from which, upon its
first mention, we are inclined to revolt; yet it is doubtless
within the competency of legislation to confer it, and we
cannot pronounce against it.   That it may be abused, we
may readily perceive, but in such cases the court possesses
the authority to interpose, and prevent its process from being
used with oppression, or for a sinister purpose.   The vindica-
tion of the legislature may perhaps be rested upon the demo-
ralizing influence of the vice it is proposed to suppress—the
extent to which it prevails—the character of the persons en-
gaged in it—the secrecy with which it is practised, and the
consequent difficulty of bringing the offenders to punishment.
It is not our business, however, to defend the expediency of
the power—it is quite enough for us, that the legislature have
declared its existence.

In Ward v. The State, 2 Miss. Rep. 120, the supreme
court of Missouri held, that the general interrogation of wit-
nesses according to the mode adopted in the case before us,
was perfectly legitimate.   That it was the duty of the grand
jury to pursue this course where they had probable cause to
believe that offences had been committed, which they could
not otherwise discover.   They are not required, say the
court, to go "into the secret recesses of gamblers, and gam-
bling devices, to ask and seek information, but to send for
persons who might in their opinion be most likely to possess
evidence relating to these matters.   It is a solemn and im-
portant duty that every citizen owes to his country, to give
evidence in courts of justice against offenders against the
peace, and good order of the community.   A grand jury
should be considered trust-worthy in this matter.   They
stand as a rampart between a malicious or incensed prosecu-
tion in case of life and death ; no man can be brought to trial
on the lowest or highest offences known to the law, unless

the grand jury shall say so ; yet they are not to be trusted with the power of sending for witnesses, till some malignant prosecutor, or some injured person, shall cause an indictment to be sent up to them. This would strip them of their greatest utility, would convert them into a mere engine, to be acted upon by circuit attorneys, or those who might choose to use them." It will be observed that the court predicates its conclusion of the powers and duties of a grand jury as recognized by the common law. We admire the patriotism which the reasoning of the court inculcates, but will not stop to consider whether the proceeding in question may be defended by an authority drawn from any other source than legislation itself. Our statute we have seen furnishes an ample warrant in the case before us.

At the common law, it was clearly competent for the court to treat as a contempt the refusal of a witness to give evidence to a grand jury; but in a case coming within the statute we are considering, the perverseness of the witness is made an offence against criminal justice punishable under an indictment, and the punishment denounced may be more efficacious for the correction of the evil. But however this may be, it is enough that the legislature have said, that the *failure or refusal* "to attend and testify," shall not be regarded as a contempt merely, but shall be prosecuted and punished as a misdemeanor. The common law power, which was given as a means of vindicating the majesty of the law, is superseded by the provision that the witness shall be indicted—thus the incidental power of the court is impliedly abrogated, and to warrant the punishment of the witness, he must be proceeded against, according to the statute.

It is not enough to relieve the witness from a prosecution, that he attended in obedience to the *subpœna*, but he should also "testify." He is brought before the jury to give evidence, and if he withholds his testimony, he subjects himself to an indictment, and the consequences which are provided. The criminal court did not take this view of the matter, but punished summarily for a contempt. Its judgment is consequently reversed.